UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL NO. 22-CR-96 (CKK) |
| | : | |
| JOHN HINSHAW, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S REPLY TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States of America, hereby, replies to Defendant Hinshaw's Sentencing Memorandum (ECF # 551) ("Def's Mem.") and Attachment (ECF #551-1).

**I.   Introduction**

In his Attachment, Hinshaw argues that his Sentencing Guidelines Offense Level, as calculated in the Presentence Investigation Report (ECF # 529) ("PSR"), is inaccurate. Specifically, he claims that the following adjustments were incorrectly applied: (1) § 3A1.3 (Restraint), (2) § 3A1.1(b)(2) (Vulnerable Victim), and (3) § 3D1.2 (Grouping). Hinshaw also suggests that the Court should vary downward and impose a sentence less than that provided for by the Guidelines. Hinshaw's objections to the calculation of his Offense Level are meritless: furthermore, consideration of the Sec. 3553(a) sentencing factors establishes that a Guidelines sentence is appropriate here.

**II.   Hinshaw's Offense Level is correct.**

As set forth in the PSR, Hinshaw's Combined Adjusted Offense Level is 18. PSR at ¶ 94. Each of the three adjustments about which Hinshaw objects was properly applied.

1

A.     **Restraint**

Hinshaw argument that his offense level was improperly adjusted pursuant to § 3A1.3 is baseless.  Attachment at 3-4.  "Physically restrained" means the forcible restraint of the victim "such as being tied, bound, or locked up."  U.S.S.G. §1B1.1, App. No. 1(L).  The use in the definition of "such as" indicates that the terms are merely illustrative examples and does not limit the type of conduct that may constitute a physical restraint.  *See, e.g.*, *United States v. Drew*, 200 F.3d 871, 880 (D.C. Cir. 2000) ("We agree that 'the use of the modifier "such as" in the definition of "physical restraint" found in § 1B1.1, Application Note 1(i) [sic], indicates that the illustrations of physical restraint are listed by way of example rather than limitation.'").  *See, e.g.*, *United States v. Stokley*, 881 F.2d 114, 116 (4th Cir.1989) (finding no error in applying physical restraint enhancement, noting "a victim need not be tied or bound up so that his movement is completely restricted. . .").

Here, several victims were "restrained."  Of course, Hinshaw need not have personally performed all the actions necessary to establish this adjustment.  *See* U.S.S.G. § 1b1.3(a)(1) (Relevant Conduct); *Pinkerton v. United States*, 320 U.S. 640, 646-47 (1946); *United States v. Khatallah*, 41 F.4th 608 (D.C. Cir. 2022) ("[A] conspirator can be found guilty of a substantive offense based upon acts of his coconspirator so long as the act was done in furtherance of the conspiracy, was within the scope of the unlawful project, and could be reasonably foreseen as a necessary or natural consequence of the unlawful agreement.").  As just one example, the defendants' actions  prevented clinic employee Sarah Compton from leaving, delaying care for her badly sprained ankle.  *See* 09/09/2023 Trial Tr. at 102 (Sarah Compton testifying, "I couldn't leave to go to the hospital until they were gone").  *See Arcoren v. United States*, 929 F.2d 1235,

2

1246 (8th Cir. 1991) (finding no error in physical restraint enhancement where defendant confined victims to a room); *United States v. Copenhaver*, 185 F.3d 178, 183 (3d Cir. 1999) ("It is the perpetrator's act of enclosing or confining the victim in a space or with a barrier, actual or threatened, that constitutes the action meriting enhancement of the offense level.").[1] Accordingly, Hinshaw's offense level was properly increased pursuant to the physical restraint adjustment.

**B.     Vulnerable Victim**

Next, Hinshaw argues that adjustment § 3A1.1(b)(2) does not apply. Attachment at 4-5. He claims that the fact that victims of his offense conduct (Shampy Holler and Ashley Jones) were pregnant does not render them a "vulnerable victim." *Id.* This argument also fails.

"[V]ulnerable victim means a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 App. N. 2. *See, e.g., United States v. Cline*, 986 F.3d 873, 880 (5th Cir. 2021) (affirming vulnerable victim adjustment where

---

[1] Additionally, Hinshaw knew that he and his coconspirators were going to be met with resistance when they breached the Clinic, so they were prepared to "interven[e] with their bodies" and "bond[] together physically. . . ." *See* Exhibit 1017. The acts of violence—whether committed by Hinshaw or his coconspirators were reasonably foreseeable and a natural consequence of the conspiracy. Furthermore, Hinshaw's argument ignores the jury's verdict. The jury found beyond a reasonable doubt that Hinshaw committed clinic access obstruction by both force and physical obstruction. *See* Verdict Form (ECF # 413) at 3. As part of that physical obstruction, clinic patients and staff were barricaded behind closed doors—Harlow and Bell chained themselves together, and, along with Hinshaw and Marshall sat in chairs and refused to move, thus blocking egress to the Clinic's treatment area, and Idoni and Goodman locked their arms and blocked the employees' entrance.

3

defendant knew the victim was pregnant; thus "particularly susceptible to [defendant's] conduct").

Both Ms. Jones and Ms. Holler qualify as vulnerable victims. Not only were they both pregnant, but both also had already started their procedures, which made them even more vulnerable to Hinshaw's efforts to block their access to reproductive health care. *See* 8/16/23 a.m. Trial Tr. at 60, 84; 8/17/23 a.m. Trial Tr. at 133. *See, e.g.*, *United States v. James*, 139 F.3d 709, 714-15 (9th Cir. 1998) (affirming the trial court's application of the vulnerable victim adjustment where the defendant threatened a pregnant bank teller during the commission of a bank robbery); *United States v. Stover*, 93 F.3d 1379, 1386 (8th Cir. 1996) ("The victims to whom § 3A1.1 applies are those who are in need of greater societal protection . . . They are the persons who, when targeted by a defendant, render the defendant's conduct more criminally depraved."). Defendant's reliance on authority holding that this adjustment does not apply to "typical victims" (Attachment at 4-5) is misplaced. Ms. Holler and Ms. Jones were uniquely vulnerable. First, one does not have to be pregnant to be a victim of the charged offenses (*e.g.*, the Clinic staff), and second, as noted above, due to the status of their procedures, Ms. Jones and Ms. Holler were particularly vulnerable.

## C. Grouping

Finally, Hinshaw maintains that the PSR is incorrect because it applies a multi-count adjustment. Attachment at 5-6. The multi-count adjustment clearly applies here. *See* U.S.S.G § 2H1.1(a)(1) (proscribing a base offense level of 12 for offenses involving individual rights involving two or more participants), U.S.S.G § 3D1.2 at n.8 ("[A]pply the ordinary grouping rules to determine the combined offense level based upon the substantive counts of which the defendant is convicted and the various acts cited by the conspiracy count that would constitute behavior of a substantive nature.").

4

5

**III.   The Court should impose a sentence at the low end of the Guidelines range.**

Hinshaw asks the Court to "impose a sentence that is at the low end or below the advisory sentencing guidelines range." Attachment at 19. The government agrees that the Court should impose a sentence at the low end of the Guidelines range. *See* Gov. Sentencing Mem. (ECF # 545) at 1. But, to the extent Hinshaw requests a downward variance, there is no basis for his request. For example, Hinshaw's argument that his Criminal History Category score supports a variance (Attachment at 16) fails, as he has been convicted of an offense involving individual rights and his conduct involved a vulnerable victim. *Cf.* §4C1.1. Adjustment for Certain Zero-Point Offenders (not applicable where "the instant offense of conviction is [] covered by §2H1.1 (Offenses Involving Individual Rights)" or "the defendant did [] receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim)."). Hinshaw also argues that a Guidelines sentence is not necessary for deterrence, because this matter has received media attention. Attachment at 17-18. In fact, imposing an overly lenient sentence in a matter that has garnered widespread attention would send exactly the wrong message, *i.e.*, there are no consequences for committing these offenses.[2]

---

[2]   We note that Hinshaw seems to agree that a Guidelines sentence would avoid unwarranted sentencing disparities. Attachment at 19.

## IV. Conclusion

Here, a sentence at the low end of the Guidelines would reflect the Sec. 3553 sentencing factors.

    Respectfully submitted,

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION
*/s/ Sanjay H. Patel*
SANJAY H. PATEL
IL Bar. No. 6272840
Trial Attorney
Criminal Section, Civil Rights Division
Email: Sanjay.Patel@usdoj.gov

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052
*/s/ John Crabb Jr.*
JOHN CRABB JR.
NY Bar No. 2367670
REBECCA G. ROSS
NY Bar No. 5590666
Assistant United States Attorneys
601 D Street, NW
Washington, DC 20001
john.d.crabb@usdoj.gov